# ABRAHAM H. GRAFF

*v.*

# DAVID M. SIMMONS

1. INSURANCE—*of a note given for the premium—liability of the maker.* In an action upon a promissory note given for the cash premium on a policy of insurance issued on the property of the maker, the receipt of the premium being acknowledged in the policy, it was sought to interpose, as a defense, that the consideration for the note had failed, in that the company, at the date of its execution, was insolvent, and the policy therefore worthless: *Held,* inasmuch as, if a loss had occurred, although the premium had never been paid, the company would have been liable, that if good cause existed for rescinding the contract and the assured deemed the policy worthless, by reason of the insolvency of the company, he ought to have surrendered it and thus relieved the company from the risk incurred under it, and, having failed to do so, he must be considered as having elected to retain the policy for its value, and hence liable for the premium.

2. INSTRUCTIONS—*as to inferences to be drawn by the jury.* It is not the province of the court to tell the jury what they may infer from certain facts proven in the case. The jury should be left to draw their own conclusions from the evidence.

APPEAL from the Circuit Court of Morgan county; the Hon. CHARLES D. HODGES, Judge, presiding.

This was an action of assumpsit, brought by Graff against Simmons, on a promissory note executed by the latter in favor of the Winnesheik Insurance Company, and afterwards assigned to the plaintiff. The note was given for the cash premium on a policy of insurance issued by that company on the property of the defendant, the receipt of the premium being acknowledged in the policy.

Mr. WILLIAM H. BARNES, for the appellant.

Messrs. MORRISON & WHITLOCK, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This cause was originally commenced before a justice of the peace, by the appellant against the appellee, upon a promissory

note. From the judgment of the justice of the peace, an appeal was prosecuted to the circuit court, where a trial was again had, which resulted in a verdict for the appellee. The appellant brings the cause to this court, and seeks a reversal, on the ground, first, that the verdict is against the weight of the evidence, and second, that the instructions given at the request of the appellee were erroneous.

The note upon which the action was brought was executed to the Winnesheik Insurance Company. It was given for the cash premium on a policy of insurance issued by that company on the property of appellee. The policy was issued in February, 1866, and, as a matter of accommodation to the assured, the appellant, as the agent of the company, instead of requiring the cash premium to be paid at once, took his note therefor, payable on the first day of July thereafter. It was the understanding between the appellant and the company, in case the notes which he should take for the cash premiums were not paid when due, that he should advance the money to the company, and take the notes at his own risk. This note was not paid at maturity, and in pursuance of that arrangement, the appellant advanced the money to the company, and took an assignment of the note to himself.

The defense sought to be interposed to the note is, that the consideration has failed, in this, that the company, at the date of the execution of the note, was insolvent, and its policies worthless. The evidence relied on to establish these facts rested entirely on common rumor, and in certain statements made by the appellant.

The appellee testifies that he had always heard that the company was "broken up," and that he had heard the appellant say that "the company was a swindle, and its officers ought to be hung." One or two other witnesses testify, in substance, the same as the appellee.

It appears that the Winnesheik Insurance Company, when it was first organized, was a mutual company. About the

time of these occurrences, the company made a very extra-ordinary assessment on its premium notes, for what purpose the evidence does not show, which raised a great popular clamor against the company, and gave rise to a good deal of severe criticism on the conduct of its officers. This fact affords the true explanation of the statements of the appellant, that "the company was a swindle, and its officers ought to be hung." The appellant, however, gives the additional reason for the remarks, that the company was "bothering" him.

The appellant testifies, in his own behalf, that the company was entirely solvent at the date of the policy issued on the property of the appellee, and has continued to be solvent ever since; that he had himself paid losses on risks, and that every loss that had occurred in the county of Morgan, and everwhere else, so far as he knew, had been promptly paid by the company.

The certificate of the auditor was introduced in evidence, which shows that, on the 30th day of June, 1869, the company had complied with the provisions of the general law approved March 11th, 1869, in relation to insurance companies, and then had the requisite amount of capital invested as the law required, and was fully authorized to pursue its business of fire insurance, under the laws of this State.

There is not a particle of legitimate evidence in this whole record that shows, or even tends to show, that, at the date of the note, the company was insolvent, or that it has been insolvent at any time from that date to the present time. On the contrary, the evidence does show that, at the date of the policy, the company was entirely solvent, and, for anything that appears in this record, it is still solvent to this day.

The appellee himself testifies that he never heard of a loss under a policy issued by that company that was not fully paid.

No loss ever occurred on the property covered by the policy issued to the appellee, and it does not appear if a loss had occurred, but what he would have been fully paid. It is in

evidence that other parties, who did sustain losses, were promptly paid.

So far as it appears from the evidence, the company carried the risk on the property of the appellee through the entire period for which the policy was written. It does not appear that the appellee ever surrendered, or offered to surrender, his policy to the company to be cancelled. If good cause existed for rescinding the contract, it was his plain duty to have surrendered the policy, and thus relieved the company from the risk incurred under it. If a loss had occurred, although the premium had never been paid, still the company would have been liable. *Illinois Central Insurance Co.* v. *Wolf*, 37 Ill. 354.

The appellee could not retain the benefit of the risk conferred by the policy, and yet, at the same time, refuse to pay the premium. If he deemed the policy worthless, he ought to have surrendered it to the company; and having failed to do so, he must be considered as having elected to retain the policy for its value, and must, therefore, be held liable for the premium.

The third instruction given by the court, on behalf of the appellee, is erroneous, and ought not to have been given. It is not the province of the court to tell the jury what they may infer from certain facts proved in the case. The jury should be left to draw their own conclusions from the evidence. *Eames* v. *Blackhart*, 12 Ill. 195 ; *Ashlock* v. *Linder*, 50 Ill. 169.

It was error in the court not to award a new trial, and the judgment must be reversed and the cause remanded.

*Judgment reversed.*